1

2

3

4

5

6

7

8

9

10

11

12

13

14

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS R. WILLIAMS, | Case No. 1:12-cv-00226-LJO-DLB PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS** |
| v. | |
| KELLY HARRINGTON, et al., | ECF Nos. 1, 10, 14 |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

15

16    **I.      Background**

17         Plaintiff Marcus R. Williams ("Plaintiff") is a prisoner in the custody of the California

18    Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in

19    forma pauperis in this civil action pursuant to 42 U.S.C. § 1983.  On February 17, 2012, Plaintiff

20    filed his complaint.  ECF No. 1.  On October 15, 2012, the Court screened Plaintiff's complaint and

21    found that it stated cognizable claims for relief against Defendants Rios, S. Stewart, M. Stewart,

22    Jayvinder, Biter, Page, Cabrera, and Harrington for violation of the Eighth Amendment.  Plaintiff

23    was provided the opportunity to either file an amended complaint or notify the Court of his

24    willingness to proceed only on the cognizable claims.  ECF No. 10.  On January 11, 2013, Plaintiff

25    notified the Court of his willingness to proceed only on the claims found to be cognizable.  The

26    undersigned issues the following Findings and Recommendations.

27         The Court is required to screen complaints brought by prisoners seeking relief against a

28    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." *Id.* § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

**II.  <u>Summary of Complaint</u>**

Plaintiff was incarcerated at Kern Valley State Prison ("PVSP") in Delano, California, where the events giving rise to this action occurred. Plaintiff names as Defendants acting warden Kelly Harrington, chief deputy warden M. D. Biter, associate warden T. Arlitz, captain M. Cabrera, captain D. Page, lieutenant M. Stewart, sergeants D. Steen, W. Epperson, and Crother, correctional officers S. Rios, S. Stewart, D. Bradshaw, and Clark, appeal coordinator D. Tarnoff, and licensed vocational nurse D. Jayvinder.[1]

Plaintiff alleges the following.

**A.  Issue One – Modified Programs/Lockdown**

Plaintiff is 41 years old and of African American descent, alleged to be a member of the Crips gang out of San Diego, California. Compl. ¶ 2. Plaintiff was first housed at KVSP A facility on June 29, 2009. Compl. ¶ 3. Plaintiff appeared before the initial classification committee on July 2, 2009. Compl. ¶ 3. Plaintiff was not advised of any security measures or factors which would restrict his access to full program. Compl. ¶6.

---

[1] Plaintiff's complaint is organized by claim, not by alleged sequence of events. The Court will reorganize Plaintiff's factual allegations for ease of comprehension.

2

On July 2, 2009, Plaintiff was cleared for access to full program and equal access to all available services and activities.  Compl. ¶ 7.  This included limited access to yard, phones, canteen, visits, packages, law library, and religion services.  Compl. ¶ 11.  Plaintiff was assigned to a A-1-A work group.  Compl. ¶ 15.

On October 1, 2009, after being subject to several weeks of lockdowns resulting in suspension or termination of access to services, Plaintiff filed a form 602 inmate appeal regarding Defendants Cabrera and Harrington's failure to provide Plaintiff with proper notice of any program changes by program status report ("PSR"), or notice as to the specifics requiring program status change.  Compl. ¶ 29.  Plaintiff was denied preapproved visits with his family and friends on August 29 and 30, September 5 and 6, and September 26 and 27 of 2009 without notice.  Compl. ¶ 32.  Defendants Steen and Arlitz reviewed the inmate appeal and granted it.  Compl. ¶ 33.  Defendants Cabrera, Harrington, Steen, and Arlitz acted in concert to subject Plaintiff to extended and excessive lockdowns.  Compl. ¶ 34.

The deprivations of outdoor exercise occurred as follows: August 3, 2009 through August 23, 2009; August 23, 2009 through September 15, 2009; September 18, 2009 through October 5, 2009; November 12, 2009 through November 30, 2009; February 11, 2010 through February 22, 2010; February yard cancelled without notice on 19 days; March 2010 yard cancelled without notice on 15 days; April 9, 2010 through May 23, 2010; May 25, 2010 through June 7, 2010; June 2010 yard cancelled without notice on 10 days; July 2010 yard cancelled on 17 days; August 2010 yard cancelled without notice on 10 days; September 2010 yard cancelled without notice on 4 days; and September 10, 2010 through October 25, 2010.  Compl. ¶ 121.

Plaintiff complained that Defendants need to identify the emergency justifying suspension or cancellation of programs, services, and activities. Compl. ¶ 123.  The appeal was granted in part in that PSRs should be issued, and that Plaintiff had already obtained the PSR through the law library. Compl. ¶ 123.

**B.      Issue Two – Cell Searches/Property/Excessive Force**

Prior to the incident, Plaintiff had filed numerous legal cases, and several inmate appeals regarding deprivations and unsafe prison conditions, with respect to lack of adequate outdoor

3

exercise, access to law library, adequate cleaning supplies, lost legal mail, and denial of visitation. Compl. ¶ 68.  Plaintiff was subject to several arbitrary cell searches.  Compl. ¶ 69.  Plaintiff's cell was searched six times between September 10, 2010 and October 26, 2010.  Compl. ¶ 71.

On October 26, 2010, Plaintiff's cell was searched.  Compl. ¶ 37.  Defendant lieutenant M. Stewart arrived at Plaintiff's cell on October 26, 2010, and ordered Plaintiff to cuff up for a cell search.  Compl. ¶ 73.

Defendants S. Stewart, Bradshaw, and Rios, correctional officers, placed Plaintiff and his cell mate in mechanical restraints and locked them in the single man shower stall while the search was conducted.  Compl. ¶ 37.  Defendants S. Stewart and Rios searched the cell for contraband and unauthorized property.  Compl. ¶ 37. No contraband or unauthorized property was found.  Compl. ¶ 39.  After the search, Defendants correctional officers S. Stewart and Bradshaw instructed control tower staff to open the shower and escorted both Plaintiff and his cell mate back to his cell.  Compl. ¶ 76.  Upon returning to the cell, Plaintiff noticed that the cell was in complete disarray, and no cell search slip was provided, identifying staff conducting the search, condition of cell, manner the cell was left, and what was confiscated.  Compl. ¶¶ 40-41.  Plaintiff observed some of his property was unaccounted for, and requested to speak with a sergeant or lieutenant.  Compl. ¶ 42.

After he was ignored by Defendants correctional officers S. Stewart and Rios, Plaintiff turned around to face Defendant Rios, while Defendant Rios was removing the handcuffs from Plaintiff's wrists.  Compl. ¶ 43.  Plaintiff contends that after he questioned Defendant Rios about the harassment and confiscation, Plaintiff was sprayed by Defendant Rios with pepper spray, through the cell door tray slot, on his face, shoulders, and chest.  Compl. ¶¶ 44, 69.

Defendant Rios then instructed Plaintiff to place his hands back through the cell door tray; he complied and was re-handcuffed.  Compl. ¶ 45.  Defendants Rios and S. Stewart then grabbed Plaintiff's wrists and instructed the guard tower to open the cell door.  Compl. ¶ 46.  Plaintiff was removed from the cell by Defendants S. Stewart and Rios and slammed to the ground, while he was handcuffed behind his back and with leg restraints on his ankles.  Compl. ¶ 47.

Plaintiff was escorted to A facility medical clinic, while in his socks.  Compl. ¶ 48.  Plaintiff was placed in a holding cell.  Compl. ¶ 49.  Defendant Jayvinder conducted a cursory visual

1  examination of Plaintiff.  Compl. ¶ 49.  Plaintiff informed Defendant Jayvinder that his knees,

2  shoulder, and back were sore and hurt, and that he still needed decontamination from the pepper

3  spray.  Compl. ¶ 49.  No treatment was provided. Compl. ¶ 50.

4      After about 20 to 30 minutes in the holding cell, Defendant lieutenant M. Stewart arrived

5  with two other staff, and ordered an unclothed body search of Plaintiff.  Compl. ¶ 51.  Defendant

6  lieutenant M. Stewart approached and told Plaintiff in a low voice, "You think you're some kind of

7  jailhouse lawyer.  Well, you will learn to do what we say do when we say do it."  Compl. ¶ 110.

8  Plaintiff informed Defendant M. Stewart that he needed to be decontaminated from the pepper spray.

9  Compl. ¶ 52.  Defendant M. Stewart informed Plaintiff that they would get to that eventually.

10  Compl. ¶ 52.  After about an hour of being locked in the holding cell, Plaintiff was finally allowed

11  access to water from the A facility medical clinic to decontaminate.  Compl. ¶ 53.  Plaintiff was then

12  escorted back to his cell.  Compl. ¶ 54.

13      Thirty minutes after Plaintiff returned to his cell, Defendant Epperson appeared to inform

14  Plaintiff that some of his property had been removed from his cell by Defendants correctional

15  officers Bradshaw, Rios, and S. Stewart, but would be returned at the end of the week.  Compl. ¶ 55.

16  Defendant Epperson did not identify what had been removed from Plaintiff's cell.  Compl. ¶ 55.

17  Plaintiff again asked for a property slip regarding what had been confiscated, but Defendant

18  Epperson did not provide one.  Compl. ¶ 55.

19      Thirty minutes later, floor staff arrived to inform Plaintiff that Defendant Epperson wished to

20  speak to Plaintiff regarding the confiscated property.  Compl. ¶ 56.  Plaintiff was escorted to the A

21  facility program office and held in a holding cage.  Compl. ¶ 58.  Defendant Epperson appeared and

22  informed Plaintiff that he was being housed in the administrative segregation unit ("ASU").  Compl.

23  ¶ 58.  Plaintiff was charged with battery on staff in connection with the earlier incident involving

24  Defendant Rios.  Compl. ¶ 59.

25      At 9:00 p.m., Plaintiff was presented with an inventory slip.  Compl. ¶ 60.  However, the

26  inventory slip did not account for Plaintiff's missing property (CD player/radio, fan, head phones,

27  adapter, and legal work), and Plaintiff did not sign the form.  Compl. ¶ 60.

28      On November 15, 2010, Plaintiff filed a 602 inmate appeal addressing his missing property.

1  Compl. ¶ 61.  The property was never returned or found.  Compl. ¶ 61.  Defendant Epperson

2  reviewed the appeal, which was a conflict of interest because he was involved in the removal of the

3  property.  Compl. ¶ 62.  Plaintiff was confined for six months in ASU.  Compl. ¶ 69.  Defendants

4  Clark and Crother confiscated and lost more of Plaintiff's preapproved property and legal work,

5  including his flat screen television, CD radio player, thermal top and bottom, legal books, and bowls.

6  Compl. ¶ 69.

7           **C.        Issue Three – Inmate Appeals and Access to Courts**

8           On August 2009, Plaintiff filed an inmate appeal complaining that Defendants Cabrera and

9  Harrington's modified program resulted in excessive periods of denial of access to yard, visits,

10 education/work, law library, canteen, phone, and packages for Plaintiff and other general population

11 prisoners.  Compl. p. 33.  Defendant Tarnoff screened out the appeal because Plaintiff filed on

12 behalf of other prisoners, which was not a proper reason in this instance.  Defendant Tarnoff had

13 screened out Plaintiff's inmate appeals on October 6, 2009 and October 11, 2009 without providing

14 any explanation.  Compl. p. 32.  On February 2010, Plaintiff had sought access to the law library to

15 get legal supplies and conduct legal research on pending litigation.  Compl. p. 33.  Defendant

16 Tarnoff rejected this appeal because Plaintiff did not first exhaust administrative remedies at the

17 informal level.  Compl. p. 33.  Defendants Biter and Page had imposed a lockdown in A facility

18 which denied Plaintiff access to the law library.  Compl. Compl. p. 33.

19          Plaintiff contends violations of the First, Eighth, and Fourteenth Amendments to the United

20 States Constitution, and Article 1, Section 15 of the California Constitution.  Plaintiff requests as

21 relief compensatory and punitive damages, declaratory relief, and injunctive relief.

22 **III.     Analysis**

23          **A.        Inmate Appeals and Access to the Courts**

24          Plaintiff contends that Defendant Tarnoff improperly denied Plaintiff's inmate appeals and

25 denied him access to the courts. Plaintiff does not state a claim regarding how his inmate appeals are

26 processed.  There is no due process right to a specific inmate grievance procedure.  *Ramirez v.*

27 *Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.

28 1988)).  Plaintiff likewise fails to state a claim against Defendants Arlitz and Steen.  Plaintiff

1   complains only of their actions in reviewing Plaintiff's inmate appeal, which fails to state a claim.[2]

2   Plaintiff further contends that Defendants Cabrera, Harrington, Page, and Biter, through the

3   imposition of modified programs and lockdowns, denied Plaintiff access to the law library, and thus

4   access to the courts.  Inmates have a fundamental right of access to the courts.  *Silva v. Di Vittorio*,

5   658 F.3d 1090, 1103 (9th Cir. 2011).  The right of individuals to pursue legal redress for claims that

6   have a reasonably basis in law or fact is protected by the First Amendment right to petition and the

7   Fourteenth Amendment right to substantive due process.  *Id.* at 1103 (citing *Snyder v. Nolen*, 380

8   F.3d 279, 291 (7th Cir. 2004)). Inmates have a right to litigate in the courts without active

9   interference by prison officials.  *Id.*

10   Inmates also have a fundamental right of access to the courts which "requires prison

11   authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

12   prisoners with adequate law libraries or adequate assistance from persons trained in the law."

13   *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *limited in part on other grounds by Lewis v. Casey*, 518

14   U.S. 343, 354 (1996). The right "guarantees no particular methodology but rather the conferral of a

15   capability – the capability of bringing contemplated challenges to sentences or conditions of

16   confinement before the courts. . . . [It is this capability] rather than the capability of turning pages in

17   a law library, that is the touchstone" of the right of access to the courts.  *Lewis*, 518 U.S. at 356-57.

18   For any claim, a prisoner must establish that he has suffered an actual injury, a jurisdictional

19   requirement from standing that cannot be waived.  *Id.* at 349.  An "actual injury" is "actual prejudice

20   with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

21   present a claim."  *Id.* at 348 (citation and internal quotation omitted).

22   Plaintiff fails to state a claim regarding access to the courts.  Plaintiff fails to allege any facts

23   which indicate that he suffered an actual injury by being denied access to the law library.  Plaintiff

24   also fails to allege facts which indicate that Defendant Tarnoff's alleged failure to properly process

25   Plaintiff's inmate appeals resulted in the denial of Plaintiff's access to the courts.

26

27

28   _____
[2] Plaintiff also makes numerous references to Defendants acting in concert and cooperation, which the Court construes as conclusory legal statements that Defendants conspired to violate Plaintiff's constitutional rights.  Conclusory legal statements are not factual allegations.  *Iqbal*, 556 U.S. at 678.

1

**B.    First Amendment Retaliation**

2       Plaintiff contends that he suffered retaliation for the filing of his numerous inmate appeals

3   regarding the lockdowns, and for his civil cases.  For a viable claim of First Amendment retaliation,

4   the following elements must be met: "(1) An assertion that a state actor took some adverse action

5   against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

6   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

7   advance a legitimate correctional goal."  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)

8   (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

9       Plaintiff fails to state a cognizable retaliation claim.  Plaintiff has sufficiently alleged

10  protected First Amendment conduct, adverse action, chilling effect, and lack of reasonable

11  advancement of penological goals.  Plaintiff has not alleged sufficient facts which indicate that

12  Defendants took adverse action against Plaintiff because of his protected First Amendment activities.

13  Plaintiff alleges that he suspected it was retaliation based on a pattern and Defendants' comments.

14  The only comment was allegedly made by Defendant M. Stewart.  However, Plaintiff's allegation

15  regarding Defendant M. Stewart's comment is not sufficient to demonstrate causation.  *Watison v.*

16  *Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (for a First Amendment retaliation claim, "the plaintiff

17  must allege a causal connection between the adverse action and the protected conduct").  While

18  timing can be considered as circumstantial evidence of retaliatory intent, *Pratt v. Rowland*, 65 F.3d

19  802, 808 (9th Cir. 1995), Plaintiff has not sufficiently alleged facts which would indicate such intent.

20

**C.    Eighth Amendment – Excessive Force**

21      "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

22  Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  *Hudson*, 503

23  U.S. at 8.  "The objective component of an Eighth Amendment claim is . . . contextual and

24  responsive to contemporary standards of decency."  *Id.* (internal quotation marks and citations

25  omitted).  The malicious and sadistic use of force to cause harm always violates contemporary

26  standards of decency, regardless of whether or not significant injury is evident.  *Id.* at 9; *see also*

27  *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard

28  examines *de minimis* uses of force, not *de minimis* injuries)).  However, not "every malevolent touch

1   by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth

2   Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional

3   recognition *de minimis* uses of physical force, provided that the use of force is not of a sort

4   'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations

5   omitted).

6         "[W]henever prison officials stand accused of using excessive physical force in violation of

7   the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

8   applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

9   cause harm." *Id.* at 7. "In determining whether the use of force was wanton and unnecessary, it may

10  also be proper to evaluate the need for application of force, the relationship between that need and

11  the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts

12  made to temper the severity of a forceful response." *Id.* (internal quotation marks and citations

13  omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does

14  not end it." *Id.*

15        Plaintiff has sufficiently alleged a claim for excessive force against Defendants Rios and S.

16  Stewart. Plaintiff alleges that Defendant Rios unnecessarily sprayed Plaintiff in the face with pepper

17  spray and that Defendants Rios and Stewart slammed Plaintiff to the ground.

18        **D.**    **Eighth Amendment – Medical Care**

19        The Eighth Amendment prohibits cruel and unusual punishment. "The Constitution does not

20  mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation

21  omitted). Prison officials must provide prisoners with adequate food, clothing, shelter, sanitation,

22  medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). A

23  prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment

24  violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of

25  life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'"

26  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732,

27  744 (9th Cir. 2002) (citation omitted)). The deliberate indifference standard involves an objective

28  and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently

1    serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second,

2    the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."

3    *Id.* at 837.

4         "Deliberate indifference is a high legal standard."  *Toguchi*, 391 F.3d at 1060.  "Under this

5    standard, the prison official must not only 'be aware of the facts from which the inference could be

6    drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"

7    *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the

8    risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the

9    risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

10        Based on Plaintiff's allegations, Plaintiff sufficiently alleges that he suffers from a serious

11   medical need, alleging that he was pepper sprayed in the face, chest, and shoulders, and had been

12   slammed to the ground, suffering some injury to his knees, wrists, arms, and back.  Plaintiff also

13   sufficiently alleges facts which demonstrate that Defendant Jayvinder acted with deliberate

14   indifference.  Plaintiff alleges sufficient facts which demonstrate that Defendant Jayvinder aware

15   that Plaintiff had been pepper-sprayed and had suffered injury to his body, but Defendant Jayvinder

16   failed to reasonably act to treat Plaintiff.  Plaintiff was not allowed to decontaminate until

17   approximately 30 minutes later.

18        Plaintiff also alleges sufficient facts to indicate that Defendant S. Stewart acted with

19   deliberate indifference.  Plaintiff alleges facts which indicate that Defendant S. Stewart was told by

20   Plaintiff that he had been pepper sprayed, and S. Stewart replied that they would get to it later.

21   Plaintiff was not decontaminated until approximately 45 minutes later.

22        **E.      Eighth Amendment – Modified Program/Lockdowns**

23        Deprivation of outdoor exercise may violate the Eighth Amendment rights of inmates.

24   *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Spain v. Procunier*, 600 F.2d 189, 199

25   (9th Cir. 1979)), *amended by* 135 F.3d 1318 (9th Cir. 1998).  Plaintiff sufficiently states an Eighth

26   Amendment claim against Defendants Biter, Page, Harrington, and Cabrera for implementation of

27   the lockdowns that resulted in the denial of outdoor exercise for Plaintiff.

28        Idleness and lack of programs does not violate the Eighth Amendment.  *Hoptowit v. Ray*, 682

10

1  F.2d 1237, 1254-55 (9th Cir. 1982).  There is also no constitutional right to access to a particular

2  visitor.  *Keenan*, 83 F.3d at 1092 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989)).

### F.    Due Process - Property

4      The Due Process Clause protects prisoners from being deprived of property without due

5  process of law, *Wolff*, 418 U.S. at 556, and prisoners have a protected interest in their personal

6  property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized,

7  intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v.*

8  *Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-

9  36 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized

10  intentional deprivations of property by a state employee "constitute a violation of the procedural

11  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

12  postdeprivation remedy for the loss is available," *Hudson*, 468 U.S. at 533.  California provides

13  such a remedy. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam).  Plaintiff fails

14  to state a claim regarding denial of due process as to his property.  Plaintiff alleges that Defendants

15  Crother and Clark lost Plaintiff's property while Plaintiff was housed in the ASU.  It appears that

16  Plaintiff alleges that the Defendants negligently lost his property.  This fails to state a claim because

17  a post-deprivation remedy is available.

18      Plaintiff fails to state a claim regarding Defendants Epperson, Rios, S. Stewart, or M. Stewart

19  deprivation of Plaintiff's property.  Plaintiff alleges that his authorized property was deprived

20  without cause, which would indicate that Defendants engaged in unauthorized deprivation of

21  property, which is not actionable as a due process claim.  Plaintiff fails to state a claim regarding the

22  failure of Defendants Epperson, Rios, S. Stewart, or M. Stewart to provide Plaintiff with a property

23  slip.  Plaintiff alleged that the failure to provide a property slip was against the California Code of

24  Regulations, which would indicate that the deprivation of property was unauthorized, and thus not

25  actionable as a due process claim.

### G.    Due Process – Notice for Modified Program/Lockdowns

27      The Due Process Clause protects prisoners from being deprived of liberty without due

28  process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In order to state a cause of action for

11

deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.

Plaintiff fails to state a due process claim for the lack of notice regarding the lockdowns/modified programs.  Plaintiff fails to allege sufficient facts which indicate that there is a state-created liberty interest such that Plaintiff suffered an atypical and significant hardship in relation to the ordinary incidents of prison life.[3]

### H.    State Law Claims

Plaintiff contends a violation of Article 1, section 15 of the California Constitution, which provides that a "Persons may not twice be put in jeopardy for the same offense, be compelled in a criminal cause to be a witness against themselves, or be deprived of life, liberty, or property without due process of law."  Plaintiff alleges no facts which would indicate that this right was implicated here.  To the extent that Plaintiff alleges a violation of due process, a similar claim regarding Article 1, Section 7(a) of the California Constitution was rejected as an independent cause of action by several district courts.  *Weimer v. County of Kern*, 1:06-CV-00735OWWDLB, 2006 WL 3834237 (E.D. Cal. Dec. 28, 2006) (citing *Katzberg v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300, 303 (2002)); *Reinhardt v. Santa Clara County*, 2006 WL 662741 (N.D. Cal. Mar. 15, 2006).

### IV.    Conclusion and Recommendation

Plaintiff states a cognizable claim against Defendants Rios, S. Stewart, M. Stewart, Jayvinder, Biter, Page, Cabrera, and Harrington for violation of the Eighth Amendment.  Plaintiff does not state any other claims against any other Defendants.  Plaintiff notified the Court that he

---

[3] Plaintiff also lists a Defendant Doe 1, a captain at KVSP. Compl. ¶ 9-10.   Plaintiff fails to state a claim against Defendant Doe 1.  Plaintiff alleges only that Defendant Doe had commented to Plaintiff that KVSP did not tolerate prisoners assaulting staff, a reference to a prior allegation in Plaintiff's disciplinary record that Plaintiff had battered staff.  Plaintiff alleges no facts which indicate that Defendant Doe 1 violated any of Plaintiff's constitutional or federal rights. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.").

wished to proceed only on the claims found to be cognizable.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1.      This action proceed against Defendants Rios and S. Stewart for excessive force in violation of the Eighth Amendment, Defendants Jayvinder and S. Stewart for deliberate indifference to a serious medical need in violation of the Eighth Amendment, and Defendants Biter, Page, Harrington, and Cabrera for deliberate indifference to conditions of confinement in violation of the Eighth Amendment;

2.      All other claims be dismissed for failure to state a claim upon which relief may be granted; and

3.      Defendants T. Arlitz, lieutenant M. Stewart, sergeants D. Steen, W. Epperson, and Crother, correctional officers D. Bradshaw and Clark and appeal coordinator D. Tarnoff be dismissed from the action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 11, 2013**                     /s/ *Dennis L. Beck*
                                             UNITED STATES MAGISTRATE JUDGE