UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS WILLIAMS,<br><br>        Plaintiff,<br><br>        v.<br><br>K. HARRINGTON, et al.,<br><br>        Defendants. | 1:12-cv-226-LJO-EPG<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Docs. 42, 88, 89)** |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of Chief U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout

the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Plaintiff Marcus Williams is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. He brings three Eighth Amendment claims against various individuals associated with Kern Valley State Prison ("KVSP"), where he was housed at all relevant times. Currently before the Court are Defendants' motions for summary judgment on all three claims. *See* Docs. 42, 88.[1] For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motions.

## III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this case against K. Harrington, KVSP Warden; M. Biter, KVSP Chief Deputy Warden; D. Page, KVSP Facility Captain; M. Cabrera, KVSP Correctional Lieutenant; M. Stewart, KVSP Correctional Lieutenant; S. Rios, KVSP Correctional Officer; S. Stewart, KVSP Correctional Officer; and D. Jayvinder, licensed vocational nurse at KVSP. The Court screened Plaintiff's complaint and found that it stated three cognizable Eighth Amendment claims against certain Defendants. The case therefore proceeded on Plaintiff's claims that (1) Harrington, Biter, Page, and Cabrera denied him the right to exercise; (2) Rios and S. Stewart used excessive force on him; and (3) M. Stewart and D. Jayvinder denied him medical care with deliberate indifference.

The following facts are not in dispute unless otherwise indicated. Plaintiff was not permitted to leave his cell for ten or more days on eight separate occasions between July 2009 and October 2010.[2] Without any notice or explanation, Plaintiff was confined in his cell from: (1) August 2, 2009 through

---

[1] Defendants filed a *Rand* warning document, *see Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc), and erroneously labeled it a motion for summary judgment on the docket. *See* Doc. 89.

[2] Plaintiff also alleges he was confined to his cell for one to three days on numerous occasions, but the basis of his claim concerns only the periods of confinement that were for ten or more days. In any event, as explained below, confinement for short periods of time (*i.e.*, less than ten days) does not violate the Eighth Amendment.

August 22, 2009 (20 days); (2) August 24, 2009 through September 15, 2009 (22 days); (3) September 18, 2009 through October 5, 2009 (18 days); (4) November 12, 2009 through November 30, 2009 (19 days); (5) February 11, 2010 through February 22, 2010 (11 days); (6) April 9, 2010 through May 23, 2010 (45 days)[3]; (7) May 25, 2010 through June 7, 2010 (10 days); and (8) September 10, 2010 through October 25, 2010 (45 days).[4] Plaintiff contends his inability to exercise during these periods of confinement violated his Eighth Amendment rights.

These periods of confinement were a result of "modified programming" in KVSP, where all or certain inmates' routines and privileges were restricted in response to serious concerns for the safety of inmates and staff. *See* Doc. 42-2, Defendants' Statement of Undisputed Material Facts ("DUMF"), at ¶ 38; Doc. 104, Plaintiff's Statement of Undisputed Material Facts ("PUMF"), at ¶ 29. Plaintiff was never involved in the incidents that led to the modified programming, but he was nonetheless subject to the restrictions, such as cell confinement.

For instance, on April 13, 2010, the Crips assaulted an officer. DUMF at ¶ 49. This led to a modified program for all Black inmates in "A-Facility," where Plaintiff was housed. Cite? "By April 22, 2010, the modified program was limited to Black inmates affiliated with the Crips, the Bloods disruptive group, and the Muslim inmates." *Id.* at ¶ 50. Because Plaintiff has been identified as affiliated with the Crips, he was subjected to the modified program. *Id.* at ¶ 9; *see also* PUMF at ¶ 12. On May 18, 2010, the inmates affected by the modified programming, including Plaintiff, were returned to normal programming. DUMF at ¶ 53. Similarly, on May 28, 2010, thirteen Crips participated in a riot, which led to modified programming for all Crip-affiliated inmates that lasted through June 7, 2010. *Id.* at ¶¶ 54-55.

---

[3] Defendants dispute that Plaintiff was confined for this 45-day period; they contend he was confined only for a 35-day period between April 13, 2010 through May 18, 2010. *See* Doc. 42-1 at 14. As discussed below, even assuming the truth of Plaintiff's account, Defendants are entitled to summary judgment on Plaintiff's claim concerning this period of confinement.

[4] According to Defendants, the undisputed evidence shows Plaintiff was continued through October 26, 2010, which means he was confined for 46 days between September and October 2010, not 45 days as Plaintiff repeatedly argues.

On October 26, 2010, Rios and S. Stewart conducted a search of Plaintiff's cell, which required Plaintiff to be removed from it. *Id.* at ¶¶ 61-62; PUMF at ¶ 46. When Plaintiff returned to the cell after the search was completed, he was upset that it had been left in "complete disarray." PUMF at ¶ 48. The parties' accounts of what happened next vary significantly.

Plaintiff alleges that he requested a "cell search slip" so he could identify who conducted the search and determine if anything had been removed or stolen. *Id.* at ¶ 49. Because Rios and S. Stewart refused to honor the request, *id.*, Plaintiff asked to speak to a sergeant or lieutenant about the search, but Rios and S. Stewart also refused that request. *Id.* at ¶ 50.

At the time of these requests, Plaintiff was handcuffed and locked in his cell. *Id.* at ¶ 51-52. Rios sprayed Plaintiff with oleoresin capsicum ("OC") pepper spray through the food port for no apparent reason. *Id.* at ¶ 51. Plaintiff asserts he followed all commands from staff, posed no threat to them, and did nothing that would have justified or required the use of pepper spray. *Id.* at ¶¶ 53-57. About 10 minutes after being pepper sprayed, Rios handcuffed him, and he and S. Stewart removed Plaintiff from the cell and slammed him to the ground. *Id.* at ¶ 58.

Rios and S. Stewart allege they used only the force necessary to respond to Plaintiff's behavior. After he had returned to his cell, Plaintiff became angry and yelled at Rios and S. Stewart. DUMF at ¶ 62. Rios ordered Plaintiff to put his hands through the food port so that his handcuffs could be removed. *Id.* at ¶ 63. Plaintiff complied. *Id.* "Rios removed the restraint from [Plaintiff]'s left wrist, but as Rios placed the handcuff key into the right side of the cuff, [Plaintiff] pulled his arm through the food port opening . . . pulling Officer Rios' right hand, with the keys still attached to the cuff, into the cell, pulling Officer Rios' arm and the keys into the cell." *Id.* Rios pulled his arm out of the food port, and Plaintiff's arm was pulled outside the cell. *Id.* at ¶ 64. S. Stewart used both hands to grab Plaintiff's right arm, but Plaintiff continued to struggle and tried to pull Rios's arm back into the cell. *Id.* Rios then used pepper spray to stop Plaintiff, spraying him in the face and chest. *Id.* Rios ordered Plaintiff to put his left hand through the food port so that he could re-apply handcuffs. *Id.* at ¶ 65. Plaintiff complied.

4

Rios and S. Stewart then entered Plaintiff's cell to remove him. *Id.* at ¶ 67. Plaintiff struggled and tried to break free. *Id.* Rios and S. Stewart forced Plaintiff to the ground and used their body weight on him while another Correctional Officer applied leg restraints to Plaintiff. *Id.*

Other Correctional Officers escorted Plaintiff to the medical facilities. *Id.* Again, the parties dispute what occurred during and after the escort.

Plaintiff claims he requested to be decontaminated from the pepper spray during after the incident with Rios and S. Stewart, but he was not escorted to the medical facilities for decontamination until about 8 to 10 minutes after being sprayed. PUMF at ¶ 59.[5] When he arrived at the medical clinic, he was placed in a holding cell for about 10 to 15 minutes without being decontaminated. *Id.* at ¶ 60. M. Stewart then approached Plaintiff, who informed M. Stewart that he still needed to be decontaminated. *Id.* at ¶ 61. M. Stewart stated, "We will get to that later." *Id.* at ¶ 61.

Approximately 15 minutes later, Plaintiff was removed from the cell and his restraints were taken off. *Id.* at ¶ 62. Jayvinder conducted a brief visual examination. *Id.* Plaintiff informed Jayvinder that he suffered numerous injuries during the incident and still needed to be contaminated, but Jayvinder did not treat Plaintiff in any way. *Id.* at ¶¶ 62-64.

Defendants' account of Plaintiff's escort to and time at the medical clinic differs. Two Correctional Officers escorted Plaintiff to the clinic. DUMF at ¶ 70. While doing so, Plaintiff was "outside in the fresh air for several minutes while being escorted approximately 100 yards" to the clinic. *Id.* at ¶ 70. Plaintiff was placed in a cell at the clinic that is a "'wet cell,' meaning there is water inside the cell for the inmate to self-decontaminate." *Id.* at ¶ 72. Staff observed Plaintiff "decontaminate himself with large amounts of cool running water." *Id.* at ¶ 73.

Approximately 20 minutes after the incident in his cell, Jayvinder evaluated Plaintiff, and found he had a rash on his chest and a small abrasion on his right forearm. *Id.* at ¶ 74. At the time of his

---

[5] Plaintiff does not indicate who allegedly escorted him.

evaluation, Jayvinder noted that Plaintiff "had been decontaminated from the effects of pepper spray." *Id.* He did not observe any other injuries. *Id.* No other physician diagnosed Plaintiff with any injury. *Id.* at ¶ 75.

Defendants move for summary judgment on all of Plaintiff's claims. As to all of Plaintiff's claims, Defendants argue for various reasons that they did not violate Plaintiff's Eighth Amendment rights and, even if they did, they are entitled to qualified immunity from his claims.

## IV. STANDARD OF DECISION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See*

Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 250.

## V. ANALYSIS

**A.     Eighth Amendment – Conditions of confinement**

Plaintiff's first Eighth Amendment claim concerning his inability to leave his cell to exercise for extended periods of time is based on his Eighth Amendment right to outdoor exercise. *See Noble v. Adams*, 646 F.3d 1138, 1141 (9th Cir. 2011) (citations omitted). As with any other Constitutional right, Plaintiff's right to outdoor exercise is not absolute. "[A] temporary denial of outdoor exercise with no medical effects is not" an Eighth Amendment violation. *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding 22-day denial of exercise did not violate Eight Amendment). A long-term deprivation of the right to exercise, however, violates the Eighth Amendment regardless of its effects, *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000), unless justified by overriding safety concerns. *See Norwood v. Vance*, 591 F.3d 1062, 1069 (9th Cir. 2009). Prison officials therefore must balance an inmate's right to exercise with their obligation to keep inmates safe. *See id.*

Plaintiff claims Defendants Harrington, Biter, Page, and Cabrera violated his Eighth Amendment rights when he was confined to his cell for 10 or more days on eight occasions. Except for two of them, all of these periods lasted for 10-22 days. The Ninth Circuit explicitly held in *May* that a 22-day denial of exercise is "temporary" and does not violate the Eighth Amendment unless it causes medical effects.[6] 109 F.3d at 565. Plaintiff does not even allege, much less provide any evidence, that he suffered any medical effects as a result of the six temporary periods of confinement to his cell without exercise. As to those periods of confinement, his Eighth Amendment claim fails.

The 45- and 46-day periods where Plaintiff was confined require further consideration, however. In *Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1994), the Ninth Circuit held that an inmate's Eighth Amendment rights were violated when he was confined to his cell for six weeks with only 45 minutes of

---

[6] The Court notes that Plaintiff does not assert he suffered any adverse medical effects as a result of his being denied outdoor exercise while confined.

7

outdoor exercise per week. It therefore follows that the two periods where Plaintiff was confined to his cell for 45 days with *no* exercise therefore could support an Eighth Amendment claim.

But such long-term deprivations of exercise are permissible if necessary for security reasons, *see Norwood*, 591 F.3d at 1065, 1069 (holding one 2-month, two 3-month, and one 4.5-month periods of cell confinement without exercise were permissible due to security concerns), and Defendants maintain that security concerns necessitated Plaintiff's 45- and 46-day periods of confinements. On April 13, 2010, during the first period (April 9, 2010 through May 23, 2010), a Crips-affiliated Black inmate assaulted an officer. DUMF at ¶ 49; Doc. 42-8, Ex. D at 58. Due to this incident, as well as "numerous acts of violence (staff assaults) by other Black factions," KVSP determined it was "necessary to place the Black inmates on [a] modified program, pending the outcome of an investigation." Doc. 42-8, Ex. D at 58. On April 22, 2010, the programming was adjusted to apply to only Crips-affiliated inmates, such as Plaintiff, and lasted until May 18, 2010. *Id.* at 59-62.

The Ninth Circuit has made clear that "prison officials are entitled to 'wide-ranging deference' and that courts must defer to prison officials' judgment as long as it does not manifest deliberate indifference or an intent to inflict harm." *Gomez v. McDonald*, No. 2:11-cv-659-KJM-DAD, 2015 WL 5435256, at *38 (E.D. Cal. Sept. 15, 2015) (quoting *Noble v. Adams*, 646 F.3d 1138, 1143 (9th Cir. 2011)). Here, there is no evidence that Defendants' decision to confine Plaintiff to his cell, without exercise, was deliberately indifferent or intended to inflict harm. After violent incidents, Defendants concluded that it was necessary to do so for the safety of staff and inmates. Plaintiff has provided no evidence to suggest that their conclusion was in any way unreasonable or impermissible. There is no evidence that Plaintiff's 45-day confinement "was in excess of what was required to restore order, was unrelated to the officials' security and safety responsibilities, and was kept in effect for a longer period than necessary." *Noble*, 646 F.3d at 1148. The Court therefore concludes that Plaintiff's 45-day confinements to his cell without exercise between April and May 2010 did not violate the Eighth Amendment.

Even assuming that it did, Defendants would be entitled to qualified immunity from the claim. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 245.

For the purposes of a qualified immunity analysis, the Court must use the injured party's facts. *Mueller v. Auker*, 576 F.3d 979, 1006 (9th Cir. 2009) ("The first step of *Saucier* asks whether, viewing the evidence in the light most favorable to the allegedly injured party, the record establishes a constitutional violation.") (citing *Saucier*, 533 U.S. at 201). In other words, "a court generally just adopts the version of the facts set forth by the party challenging immunity." *Id.* (emphasis added) (citing *Scott,* 550 U.S. at 381 n.8 (holding that the dispositive question in the first step of *Saucier*—whether those facts establish a constitutional violation—"is a pure question of law"). Because qualified immunity is an affirmative defense, the defendant bears the burden of establishing entitlement to it. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense, the burden of pleading it rests with the defendant.").

Resolving whether qualified immunity applies is a two-step sequence. *Saucier v. Katz*, 533 U.S. 194, 232 (2001). The Court must ask (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right"; and, (2) "whether the right at issue was 'clearly established' at the

time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 232).

*Norwood* and *Noble* establish that Defendants are entitled to qualified immunity from Plaintiff's claim concerning the first of his two 45-days of confinement in April-May 2010. In *Norwood*, decided in July 2009, the Ninth Circuit held defendant-prison officials were entitled to qualified immunity from Plaintiff's claim that their confining him to his cell for periods of two, three, and four months violated the Eighth Amendment. 591 F.3d at 1065, 1070. In response to violence in the prison, the defendants imposed across-the-board lockdowns on all inmates, as well as group-specific ones, both of which applied to the plaintiff. *Id.* at 1070. The Ninth Circuit observed that the plaintiff did not provide any evidence that called into question the defendants' conclusion that the lockdowns were necessary to restore order and ensure the safety of inmates and staff and, accordingly, they were entitled to qualified immunity because "a reasonable officer could have believed that restricting [the plaintiff's] outdoor exercise was consistent with the Eighth Amendment." *Id.*

In *Noble*, decided in March 2011, the Ninth Circuit observed that it is was not clearly established how and when prison officials were required under the Eighth Amendment to restore inmates' ability to exercise after imposing a lockdown on the entire prison in response to a violent riot. 646 F.3d at 1143. As another judge of this Court recently recognized, "under the Ninth Circuit's decisions in *Norwood* and *Noble*, however, it was not clearly established in 2009-2010 how and under what circumstances prison officials were constitutionally required to provide [inmates] with outdoor exercise in light of . . . ongoing violence" in a prison. *Gomez v. McDonald*, 2015 WL 5435256, at *38 (collecting cases). The Court therefore finds Defendants are entitled to qualified immunity from Plaintiff's Eighth Amendment claim concerning his 45-day confinement in April-May 2010.

The second of Plaintiff's 45-day confinement, from September 10, 2010 to October 25, 2010, presents a more difficult question. On September 10, 2010, a riot involving numerous Southern Hispanics and Black inmates occurred in A-Facility. Due to this incident, all inmates that belonged to

10

those ethnic groups, including Plaintiff, were placed on modified programming. On October 13 and 14, 2010, all inmates in A-Facility were placed on a medical quarantine due to a possible case of meningitis.

Although Defendants contend Plaintiff was subject to safety-related modified programming from September 10, 2010 through October 25, 2010, they partially fail to substantiate this contention. Defendants provide evidence of A-Facility being placed on modified programming on September 10, 2010, and again on October 13-14, 2010, *see* Doc. 42-8, Ex. D at 68-70, but they do not provide any evidence that shows modified programming was in place between September 11, 2010, and October 12, 2010, or between October 14, 2010 and October 25, 2010. In fact, in their statement of undisputed material facts, Defendants do not even allege that modified programming that began on September 10, 2010, persisted through October 25, 2010. *See* DSUF at ¶¶ 56-59 (citing only Doc. 42-8, Ex. D at 68-70). Plaintiff, however, provides evidence that the modified programming lasted through at least September 30, 2010. *See* Doc. 104 at 187. The question, then, is whether the approximately 23 days that Plaintiff was confined to his cell between September 30, 2010 and October 25, 2010,[7] violated the Eighth Amendment.[8]

*May* and *Lopez* are instructive here. In *May*, 109 F.3d at 565, the Ninth Circuit held that an inmate's 22-day denial of outdoor exercise was a temporary deprivation that did not violate the Eighth Amendment. In *Lopez*, 203 F.3d 1133, on the other hand, the Ninth Circuit held that an inmate's 6.5-week denial of outdoor exercise was a long-term deprivation that violated the Eighth Amendment.

Plaintiff's 23-day denial is therefore best characterized as a temporary deprivation under *May* that did not violate his Eighth Amendment rights. Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's Eighth Amendment denial of outdoor exercise claim.

---

[7] This 23-day calculation exempts October 13-14, 2010, when A-Facility was on modified programming due to a potential meningitis case.

[8] This is so because Plaintiff does not and cannot dispute that KVSP officials determined the modified programming between September 10-30, 2010, and October 13-14, 2010, was necessary for security reasons. As explained above, the Court must defer to that determination and, in light of it, Defendants did not violate Plaintiff's Eighth Amendment rights during this timeframe.

**B. Eighth Amendment – Excessive force**

Plaintiff contends Rios and S. Steward used excessive force on him during the October 26, 2010 incident in his cell. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident. *Id.* at 9-10. In making this determination, the Court evaluates (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Id.* at 7.

Because assessing the need for force "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law . . . should be granted sparingly" in cases involving claims of excessive force. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). "This is because such cases almost always turn on a jury's credibility determinations." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury; only in the absence of material disputes is it a pure question of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citations and quotation marks omitted).

Plaintiff's excessive force claim presents precisely the kind of claim that must be resolved by a jury as it turns on numerous factual disputes. As outlined above, Plaintiff's account and Defendants' account of what occurred in Plaintiff's cell on October 26, 2010, and why it occurred, are irreconcilable.

Briefly put, if Plaintiff's account is to be believed, Rios and S. Stewart essentially assaulted Plaintiff for no reason, but if their account is to be believed, they used only the amount necessary to stop Plaintiff's unprovoked attack of Rios and restrain Plaintiff to ensure their safety. The resolution of these differing accounts will "turn on a jury's credibility determinations." *City of Hemet*, 394 F.3d at 701. Accordingly, Defendants' motion for summary judgment on the ground they did not use excessive force is DENIED. Likewise, their motion for summary judgment on the ground they are entitled to qualified immunity from Plaintiff's excessive force claim is DENIED. *See Bagley*, 988 F.2d at 873-74 ("If the court finds that a genuine issue of underlying fact does exist, it should postpone the qualified immunity determination until the facts have been developed at trial.").

**C. Eighth Amendment – Medical care**

Plaintiff asserts Jayvinder and M. Stewart were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Under the Eighth Amendment, the government has an obligation to provide medical care to those who are incarcerated. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). *Lopez* takes a two-prong approach to evaluating whether medical care, or lack thereof, rises to the level of "deliberate indifference." First, a Court must examine whether the plaintiff's medical needs were serious. *See id.* Second, a Court must determine whether "officials intentionally interfered with [the plaintiff's] medical treatment." *Id.* at 1132. "The indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06).

After Plaintiff was pepper-sprayed in his cell, he was escorted to KVSP's medical clinic. According to Plaintiff, he was immediately placed in a holding cell, where he was unable to decontaminate from the effects of the pepper spray. Doc. 103 at 29. Approximately 20-25 minutes later,

M. Stewart appeared. *Id.* Plaintiff informed M. Stewart that he needed medical attention and to be contaminated, to which M. Stewart responded: "We will get to that later." Approximately 15-20 minutes later, Plaintiff was seen by Jayvinder, a licensed vocational nurse, who performed an "informal examination" of Plaintiff. *Id.* After this "brief examination," Plaintiff was placed back into the cell without any further medical attention or decontamination. *Id.* at 30. Finally, after approximately an hour at the medical clinic, Plaintiff was allowed access to a sink and faucet, where he doused himself with water to decontaminate from the pepper spray.

The Court assumes without deciding that, when he presented to the medical clinic, Plaintiff's medical needs were serious. Plaintiff, however, has failed to establish that M. Stewart was deliberately indifferent to those needs. Plaintiff does not even allege, much less substantiate, that M. Stewart denied, delayed, or intentionally interfered with Plaintiff's medical treatment in any way that would suggest he was deliberately indifferent. As Plaintiff asserts, at most 20 minutes passed between when Plaintiff told M. Stewart that he needed medical attention and when Jayvinder, a nurse, attended to Plaintiff. And there is no indication that M. Stewart interacted with Plaintiff beyond this brief encounter, nor is there any evidence that M. Stewart was responsible for Plaintiff's cell placement. More importantly, Plaintiff does not allege or provide evidence that M. Stewart had the authority to prevent Plaintiff from decontaminating himself and that he exercised that authority. The Court therefore concludes Plaintiff's Eighth Amendment claim for denial of medical care against M. Stewart fails. Accordingly, the Court GRANTS M. Stewart's motion for summary judgment on the claim.

**D. Defendant Jayvinder**

At the screening stage, the Court found Plaintiff's complaint stated a cognizable claim against Jayvinder. *See* Doc. 20 at 1-2. In April 2013, Plaintiff was directed to submit various documents to the Court and explained that once he did so, the Court would effect service on Defendants. Plaintiff complied, and the U.S. Marshal directed service on Defendants, including Jayvinder, in May 2013. *See* Doc. 24 at 1-2. Jayvinder, however, never made an appearance in this case. Plaintiff now requests in his

opposition to Defendants' motions for summary judgment that the Court enter a default judgment against Jayvinder.

The record contains no information as to whether Jayvinder was in fact served. The Court therefore DENIES Plaintiff's request that the Court enter default judgment against Jayvinder because from what the Court currently has in the file, it has no jurisdiction to do so. <u>Plaintiff shall inform the Court within 15 days of this Order whether he requests that the Court re-order the U.S. Marshal to attempt to effect service on Jayvinder.</u> <u>If Plaintiff does not elect to do so, the Court will dismiss Jayvinder from this case.</u> Plaintiff is informed that, if he requests the Court to re-serve Jayvinder, this may necessitate further delay of the resolution of the claims that have survived summary judgment.

**E. Plaintiff's requested relief.**

In his complaint, Plaintiff asks for unspecified injunctive relief against KVSP. Defendants move to dismiss the request as moot because Plaintiff is no longer at KVSP. Because Plaintiff has been transferred to a different institution and there is no indication he will be returned to KVSP, his request for injunctive relief is moot. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]"). Accordingly, the Court DISMISSES Plaintiff's injunctive relief request.

Similarly, Defendants move to dismiss Plaintiff's claims for mental and emotional injury associated with the periods that he was denied outdoor exercise as barred by 42 U.S.C. § 1997e(e). Doc. 42-1 at 16. The Court need not address this issue because the Court granted Defendants' motion for summary judgment on Plaintiff's claim concerning his being denied outdoor exercise.

## VI. CONCLUSION AND ORDER

For the foregoing reasons, the Court:

    **1.**    GRANTS Defendants' motion for summary judgment on Plaintiff's denial of exercise claim;

15

    **2.**    DENIES Defendants' motion for summary judgment on Plaintiff's excessive force claim;

    **3.**    GRANTS M. Stewart's motion for summary judgment on Plaintiff's medical claim;

    **4.**    DISMISSES Plaintiff's injunctive relief request; and

    **5.**    DENIES Plaintiff's request for entry of default judgment against Jayvinder.

IT IS SO ORDERED.

Dated:   **October 20, 2016**          /s/ Lawrence J. O'Neill
                                                   UNITED STATES CHIEF DISTRICT JUDGE